UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

Joseph Spirit Cougar Lampman,

      Plaintiff,

      v.

Nicholas Deml, Amy Jacobs, William Collins,
Byron Burdick, and Alexander Bourgeois,

      Defendants.

Civil Action No. 2:24–cv–166-gwc-kjd

## <u>REPORT AND RECOMMENDATION</u>
(Docs. 21, 22)

To provide necessary context for the motions under review, this Report and Recommendation (R&R) begins with a brief procedural history of the case.

On April 2, 2024, Plaintiff Joseph Spirit Cougar Lampman, an incarcerated individual proceeding pro se, filed a Complaint under 42 U.S.C. § 1983 against Vermont Department of Corrections (DOC) Commissioner Nicholas Deml;[1] Northern State Correctional Facility (NSCF) Superintendent Amy Jacobs; NSCF Volunteer Services Coordinator William Collins; and Corrections Services Specialist Alexander Bourgeois. Plaintiff alleged that DOC had denied him "Native American Indian Services" since October 29, 2019, the date he was apparently transferred from a correctional facility in Mississippi and placed in NSCF custody. (Doc. 7 at 4–5.) He further alleged that NSCF staff "used racial slurs and broke [his] sacred objects," and charged him with major disciplinary violations due to their bias against him. (*Id.* at 5.) He

---

[1] Defendant Deml resigned as DOC Commissioner effective August 15, 2025. *See Press Release of the Office of Governor Phil Scott,* <u>Governor Phil Scott Announces Departure of Corrections Commissioner Nick Deml, Appoints Jon Murad as Interim Corrections Commissioner | Department of Corrections</u> (issued July 28, 2025).

requested that he be permitted to have "sacred objects" to practice his religion and $3 million in damages for emotional, mental, and spiritual distress. (*Id*.)

Plaintiff filed a Motion for Summary Judgment on June 6, 2024. (Doc. 8.) The Court denied the Motion for Summary Judgment. (Doc. 25.) Regarding Plaintiff's apparent claim that he was entitled to summary judgment because Defendants had not filed an Answer to his Complaint, the Court explained that Defendants' filing of a Motion to Dismiss suspended the deadline to file a responsive pleading until fourteen days after notice that the court either denied the motion or postponed its disposition until trial on the merits. (*Id.* at 2.) The Court further explained that summary judgment was not warranted because Plaintiff's motion did not comply with the requirements of Rule 56 in that it did not demonstrate an entitlement to judgment as a matter of law based on undisputed material facts. (*Id*. at 2–3.) The Court also provided guidance as to what a plaintiff must demonstrate to establish a free-exercise claim under the First Amendment. (*Id*. at 3–4.)

The DOC Defendants moved to dismiss the Complaint on August 8, 2024. (Doc. 14.) Plaintiff did not respond to Defendants' Motion to Dismiss but filed a Motion to Amend Complaint on November 6, 2024. (Doc. 17.) Defendants requested that the Court deny leave to amend because the proposed amended Complaint failed to state a claim and was therefore futile. (Doc. 18.)

In a January 13, 2025 R&R, the undersigned recommended that the Motion to Dismiss be granted because (1) sovereign immunity barred Plaintiff's claims for damages against all Defendants in their official capacities; and (2) Plaintiff had not adequately stated a § 1983 claim against Defendants in their individual capacities because he had not alleged that any named Defendants were personally involved in the alleged constitutional violations. (Doc. 20 at 2.) The

R&R also concluded that Plaintiff's proposed Amended Complaint (Doc. 17) was deficient for the same reasons and therefore subject to dismissal. (Doc. 20 at 2.) Nevertheless, the undersigned recommended that Plaintiff be afforded an opportunity to amend his Complaint, noting that it was unable to determine definitively that any amendment would be futile:

> The Court cannot determine at this stage that amendment would be futile. Although the pending state court case may resolve Plaintiff's claims regarding his requested religious items (*see* Doc. 14 at 1–4), the federal Complaint alleges other violations that appear to be absent from the state court case. Specifically, Plaintiff alleges that DOC unlawfully denied him access to Native American Indian services; that NSCF staff have used racial slurs and broken Plaintiff's sacred objects; and that staff have allegedly charged Plaintiff with major disciplinary violations because of their bias against him. (Doc. 7 at 4–5.) Plaintiff's proposed Amended Complaint does not mention any of these allegations. (Doc. 17.) On this limited record, it is not clear whether Plaintiff intends to proceed on all the allegations in his original Complaint or whether he only intends to proceed on the claim that he has been denied access to a particular sacred object, as alleged in the proposed Amended Complaint.

(*Id.* at 10.)

Although Plaintiff did not file an objection to the R&R, he did file an Amended Complaint for Violation of Civil Rights against several corrections officials under 42 U.S.C. § 1983, alleging violations of his First Amendment right to free exercise of religion and his Fourteenth Amendment right to equal protection of the laws. (Doc. 21.)

Plaintiff's Amended Complaint asserts claims against the following DOC Defendants in their individual capacities: former Commissioner Deml, NSCF Superintendent Amy Jacobs, Volunteer Services Coordinator William Collins, NSCF Assistant Superintendent Byron Burdick, and Corrections Service Specialist Alexander Bourgeois.

Defendants move to strike the Amended Complaint, arguing that the pendency of the R&R means that the Court has not yet authorized Plaintiff to file an amended complaint. (Doc. 22 at 2.) Defendants contend that, in this procedural posture, Plaintiff was required to request

leave to amend the Complaint under Federal Rule of Civil Procedure 15(a)(2), which he has not done. Alternatively, Defendants move to dismiss the Amended Complaint. (Doc. 22.)

For the reasons explained below, I recommend that Plaintiff's Amended Complaint, construed as a Motion to Amend (Doc. 21), be granted. I further recommend that the Court grant in part Defendants' Motion to Strike Plaintiff's Amended Complaint or, in the Alternative, Motion to Dismiss Amended Complaint (Doc. 22) as to Defendants Deml, Bourgeois, and Burdick and deny Defendants' Motion as to Defendants Jacobs and Collins.

I also recommend that the Court dismiss Plaintiff's Fourteenth Amendment claims under 42 U.S.C. § 1983 and Plaintiff's claims under 42 U.S.C. § 1996 as to all Defendants.

## **Factual Background**

The following factual allegations are taken from Plaintiff's proposed Amended Complaint. (*See* Doc. 21.) At this stage, the Court assumes the truth of the factual allegations in Plaintiff's Amended Complaint. *See Ashcroft v. Iqbal*, 556 U.S. 662, 679 (2009); *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 555–56 (2007).

Plaintiff is currently under the supervision of DOC and incarcerated at NSCF. (Doc. 21 at 1, 2.) Plaintiff is a tribal citizen of the Abenaki Nation of Missisquoi in Vermont. (*Id.* at 3–4.) He observes the traditional religious practices of his tribe, including smudging and pipe ceremonies.[2] (*Id.* at 4.)

Sometime in the 1990s, Plaintiff "was called to the sacred pipe and became a pipe carrier" in his tribe. (*Id.*) A pipe carrier must "carry and honor the pipe and . . . conduct pipe ceremonies in accordance with the traditions established by previous Abenaki pipe carriers." (*Id.*) The position of pipe carrier confers "great honor, respect, and responsibility." (*Id.*)

---

[2] "Smudging" is "a Native American ceremony involving burning grasses and tobacco led by an elder or spiritual leader." *Baltas v. Chapdelaine*, ---F.4th--- , 2025 WL 2524458 at *2 (2d Cir. Sept. 3, 2025).

4

On or about October 29, 2019, DOC transferred Plaintiff from a facility in Mississippi to a Vermont facility. (*Id.*) Plaintiff alleges that he was able to practice his traditional beliefs while incarcerated in Mississippi. (*Id.* at 4–5.)

Since returning to Vermont, Plaintiff has requested Native American services at NSCF several times. (*Id.* at 5.) DOC's Volunteer Services Coordinator, William Collins, "would answer some request[s] and others he would not answer." (*Id.*)

According to Plaintiff, DOC has not held any Native American services since he returned to Vermont. (*Id.*) DOC's Religious Services Guide, which Plaintiff attaches to his Amended Complaint, provides that "[s]mudging is to take place at least one time per week" and that pipe ceremonies "shall be held at minimum once per month." (Doc. 21-1 at 34.)

On August 11, 2024, Plaintiff placed a request to order a "personal prayer pipe" after consulting with Chief Gagne of the Abenaki Nation of Missisquoi. (Doc. 21 at 5.) On August 23, NSCF Superintendent Amy Jacobs approved Plaintiff's request for a personal prayer pipe, provided that the pipe "is to be in [Plaintiff's] possession only, in [his] cell, unless being used for ceremony purposes approved in advance by superintendent or designee." (*Id.* at 5–6; *see also* Doc. 17-1 at 1.)

The pipe arrived at NSCF on September 3, 2024. (Doc. 21 at 6.) According to Plaintiff, DOC has never given the pipe to Plaintiff. (*Id.*) Plaintiff has "requested many times to view and use" the pipe, and DOC staff, including Amy Jacobs, Byron Burdick, and William Collins, allegedly deny or do not answer each request. (*Id.*)

Plaintiff also alleges that NSCF staff members—identified in the Amended Complaint only as "John Does"—have told him that he is white, not Native American, and broken his

"sacred objects." (*Id.*) The Amended Complaint does not specify which sacred objects staff members allegedly broke.

## Analysis

Before reaching the substance of the pending Motions, the Court addresses whether the Amended Complaint is properly considered at this time. As noted above, Defendants argue that Plaintiff must have leave of Court to file an Amended Complaint. (Doc. 22 at 2.) I previously recommended that Plaintiff receive an opportunity to file an amended complaint, (Doc. 20 at 10), but Plaintiff filed his current Amended Complaint before receiving a ruling on the recommendation. Because Plaintiff likely interpreted the R&R to definitively authorize the filing of an amended complaint, and in light of the Court's obligation to construe pro se pleadings liberally, *see Harris v. Miller*, 818 F.3d 49, 56–57 (2d Cir. 2016) (per curiam), the Court construes the Amended Complaint as a motion to amend the complaint.

## I.    Motion to Amend

Leave to amend pleadings "shall be freely given when justice so requires," Fed. R. Civ. P. 15(a), absent a showing of excessive delay, undue prejudice to the opposing party, bad faith, or futility. *See Holmes v. Grubman*, 568 F.3d 329, 334 (2d Cir. 2009); *Lucente v. Int'l Bus. Machs. Corp.*, 310 F.3d 243, 258 (2d Cir. 2002). A court may deny a motion to amend if the amendment would be futile. *See Lucente*, 310 F.3d at 258 (amendment is futile if proposed claim would not withstand a motion to dismiss under Rule 12(b)(6)).

Defendants have not argued that allowing Plaintiff to amend his complaint would cause excessive delay, undue prejudice to the opposing party, or bad faith. As the essential factual allegations in this case have not significantly changed over time, Plaintiff's proposed Amended Complaint does not place Defendants at a disadvantage. Further, to the extent that Plaintiff

interpreted the R&R to authorize the immediate filing of an Amended Complaint, the Court

extends the required solicitude to Plaintiff for his reasonable misunderstanding and considers the

Motion to Amend the Complaint.[3]

To the extent that Defendants contend the Amended Complaint should be stricken

because it does not comply with Rules 8 and 10, the Court interprets this argument to be a

motion for a more definite statement under Rule 12(e). (Doc. 22 at 4.) Rule 12(e) permits the

filing of a motion for a more definite statement if the pleading "is so vague or ambiguous that the

party cannot reasonably prepare a response." Motions for a more definite statement are

"generally disfavored" and should not be granted unless the pleading "is so excessively vague

and ambiguous as to be unintelligible and as to prejudice the defendant seriously in attempting to

answer it." *Cole v. N.Y. State Dep't of Corr. Servs.*, No. 9:10-CV-1098 (NAM/TWD), 2012 WL

4491825, at *22 (N.D.N.Y. Aug. 31, 2012) (cleaned up), *report and recommendation adopted*,

2012 WL 4506010 (N.D.N.Y. Sept. 28, 2012). The decision whether to grant or deny a motion

for a more definite statement is a matter within a court's discretion. *See Crawford-El v. Britton,*

523 U.S. 574, 597–98 (1998).

The Amended Complaint is neither so vague nor so ambiguous as to be unintelligible. It

is organized into sections with clear headings—naming the parties, establishing jurisdiction,

reciting the statement of facts, and specifying the relief sought—and the reader can identify the

allegations against each Defendant. Although the Amended Complaint does not contain

numbered paragraphs as required by Rule 10, it does contain short, distinct paragraphs that

---

[3] Because a court may deny a motion to amend if the amendment would be futile, in Part III the Court
screens the Amended Complaint under 28 U.S.C. § 1915A in conjunction with Defendants' Motion to Dismiss. *See
Lucente*, 310 F.3d at 258; 28 U.S.C. § 1915A(b) (requiring district court to dismiss a complaint filed by an
incarcerated person against a governmental entity if "the complaint, or any portion of the complaint . . . fails to state
a claim upon which relief may be granted.")

plainly articulate the factual and legal bases of each claim. The Amended Complaint also explains and attaches the pertinent policy Plaintiff alleges Defendants violated, reducing the risk of ambiguity. Defendants will not be prejudiced by having to answer whatever allegations remain after determination of their Motion to Dismiss.

For these reasons, I recommend that the Court DENY Defendants' Motion to Strike (Doc. 22).

## II.     Motion to Dismiss

Alternatively, Defendants ask the Court to dismiss Plaintiff's Amended Complaint under Rule 12(b)(6). Defendants contend that the Court should dismiss the Amended Complaint under *Younger* and *Colorado River* abstention doctrines because Plaintiff's two cases[4] raising similar issues are pending in Vermont Superior Court and a third case in state court recently concluded.[5] (Doc. 22 at 3–4.) Defendants also contend that the recently resolved state court case precludes this Court from considering Plaintiff's claims here. (*Id.*) In addition, Defendants assert that the Eleventh Amendment bars claims against Defendants in their official capacities; that Plaintiff fails to allege each Defendant's personal involvement in any alleged constitutional violations; and that the Amended Complaint does not comply with Rules 8 and 10. (*Id.* at 4–5.)

---

[4]     As explained in Part II.A.2.iv *infra*, the Superior Court recently dismissed one of these cases. As the Court has received no further information from the parties regarding the effect, if any, of this development on abstention specifically, or the case generally, the R&R addresses Defendants' arguments as presented in the briefing.

[5]     The third state court case (Docket No. 21-cv-604) was filed before this case. (*Id.* at 3.) However, the state court closed that case on February 7, 2025. (*Id.*) Because the state court case has now concluded and will not resolve all of Plaintiff's pending claims, the Court does not consider Docket No. 21-cv-604 in the abstention analysis but considers the case in the claim preclusion analysis below.

A. **The Court should not abstain from addressing plaintiff's claims under** *Younger* **and** *Colorado River*

1. *Younger* Abstention

*Younger* abstention is one exception to the general rule that "a federal court's obligation to hear and decide a case is virtually unflagging." *Sprint Commc'ns, Inc. v. Jacobs*, 571 U.S. 69, 77 (2013) (internal quotation marks omitted). It "is grounded in interrelated principles of comity and federalism." *Spargo v. N.Y. State Comm'n on Jud. Conduct*, 351 F.3d 65, 74 (2d Cir. 2003). Abstention "is not a jurisdictional bar based on Article III requirements, but instead a prudential limitation on the court's exercise of jurisdiction." *Id.* As a result, a district court's discretion "must be exercised within the narrow and specific limits prescribed by the particular abstention doctrine involved." *Niagara Mohawk Power Corp. v. Hudson River-Black River Regulating Dist.*, 673 F.3d 84, 99 (2d Cir. 2012). "It is axiomatic . . . that abstention from the exercise of federal jurisdiction is the exception, not the rule." *Ankenbrandt*, 504 U.S. at 705 (cleaned up).

Under *Younger*, federal courts should abstain from enjoining ongoing state court actions in three "exceptional" circumstances: (1) ongoing state criminal prosecutions; (2) "particular state civil proceedings that are akin to criminal prosecutions"; and (3) "civil proceedings involving certain orders . . . uniquely in furtherance of the state courts' ability to perform their judicial functions." *Sprint Commc'ns*, 571 U.S. at 72–73 (internal quotation marks omitted). It is the State's burden to establish that the state court civil proceeding implicates an important state interest. *See Phillip Morris, Inc. v. Blumenthal*, 123 F.3d 103, 106 (2d Cir. 1997). *Younger* applies to federal claims for declaratory and injunctive relief but "is not appropriate with respect to [a] claim for money damages." *Kirschner v. Klemons*, 225 F.3d 227, 235, 238 (2d Cir. 2000).

"In determining whether the 'important state interest' requirement has been met," courts consider "whether the state action concerns the central sovereign functions of state government

9

such that exercise of the federal judicial power would disregard the comity between the States and the National Government." *Blumenthal*, 123 F.3d at 105–06 (citation modified). Federal courts have generally found important state interests in cases related to core sovereign functions such as safeguarding child welfare, managing intrastate utilities, regulating attorney conduct, or overseeing state election processes. *See, e.g.*, *Moore v. Sims*, 442 U.S. 415, 423 (1979) (child custody and welfare); *New Orleans Pub. Serv., Inc. v. Council of New Orleans*, 491 U.S. 350, 365 (1989) (intrastate utility rates); *Middlesex Cnty. Ethics Comm. v. Garden State Bar Ass'n*, 457 U.S. 423, 434 (1982) (attorney conduct); *Fam. Found., Inc. v. Brown*, 9 F.3d 1075, 1077 (4th Cir. 1993) (state elections).

Defendants have not demonstrated that the pending state court actions implicate an important state interest to the degree that it warrants abstention. According to Defendants, the three state court cases address "access to sacred objects," "the availability of Native American services at" NSCF, and "the use of [Plaintiff's] preferred name 'Spirit Cougar,'" issues that appear to implicate First Amendment religious rights of prisoners. (Doc. 22 at 3–4.) Defendants have not offered authority or argument that the correctional facility's adherence to its religious-services policy implicates "central sovereign functions of state government," as described above. *Blumenthal*, 123 F.3d at 105-06. The state's interest is insufficient to warrant *Younger* abstention.

### 2.    *Colorado River* Abstention

Under *Colorado River*, a case pending in state court generally does not bar federal court proceedings involving the same matter, except in the rare instance "where the order to the parties to repair to the state court would clearly serve an important countervailing interest." *Colo. River*

*Water Conservation Dist. v. United States*, 424 U.S. 800, 813 (1976) (quoting *County of Allegheny v. Frank Mashuda Co.*, 360 U.S. 185, 189 (1959)).

In conducting *Colorado River* abstention analysis, the court must first determine whether the concurrent proceedings are "parallel." *See, e.g.*, *Dittmer v. County of Suffolk*, 146 F.3d 113, 117–18 (2d Cir. 1998). "Suits are parallel when substantially the same parties are contemporaneously litigating substantially the same issue in another forum." *Niagara Mohawk Power Corp.*, 673 F.3d at 100 (internal quotation marks omitted). However, "absolute congruency is not necessary to support a finding of *Colorado River* parallelism." *Pabco Constr. Corp. v. Allegheny Millwork PBT*, 2013 WL 1499402, at *2 (S.D.N.Y. Apr. 10, 2013). "Perfect symmetry of parties and issues is not required." *United States v. Blake*, 942 F. Supp. 2d 285, 297 (E.D.N.Y. 2013) (cleaned up). "Rather, parallelism is achieved where there is a substantial likelihood that the state litigation will dispose of all claims presented in the federal case." *Phillips v. Citibank, N.A.*, 252 F. Supp. 3d 289, 295 (S.D.N.Y. 2017) (cleaned up).

This case and the two state court proceedings share similar parties (DOC staff and leadership), overlapping fact patterns, and essentially the same requested relief—money damages and injunctions compelling DOC to facilitate Native American religious practices.[6] Every claim arises from DOC's alleged refusal to honor its policies governing smudging, pipe ceremonies, and use of Plaintiff's preferred name "Spirit Cougar."

In one state court case, Docket No. 25-CV-127, Plaintiff alleges that NSCF "bans communal and individual pipes" in violation of DOC policy that requires monthly pipe ceremonies. Mot. to Amend Compl. 4, *Lampman v. Deml et al.*, No. 25-CV-127 (Vt. Super. Ct. Apr. 29, 2025). Plaintiff submits that without access to his ceremonial pipe, the "direct dialogue"

---

[6] The Court takes judicial notice of the state court dockets and filings under Federal Rule of Evidence 201(b). *See Giraldo v. Kessler*, 694 F.3d 161, 164 (2d Cir. 2012).

with the Creator integral to his faith cannot occur. *Id.* Plaintiff further claims that NSCF has held

no Native American services at all. *Id.* In the other state court case, Plaintiff asserts that DOC

staff refuse to address him by the name "Spirit Cougar." Compl. for Review of Governmental

Action 1, *Lampman v. Deml*, No. 24-CV-5437 (Vt. Super. Ct. Dec. 23, 2024).

Plaintiff's Amended Complaint in this case raises similar allegations: that NSCF has not

offered Native American services since Plaintiff returned to Vermont on October 29, 2019,

notwithstanding DOC policy requiring weekly smudging and monthly pipe ceremonies. (Docs.

21 at 4–5; 21-1 at 34.) Plaintiff's personal prayer pipe remains in DOC custody despite his

repeated requests "to inspect and use" it. (Doc. 21 at 6.) The only allegation unique to the federal

complaint is that NSCF staff have allegedly disparaged his faith by telling him he is "not even

Native American but 'white'" and on at least one occasion have broken his sacred objects. (*Id.*)

However, this is a relatively narrow factual issue when the broader claim—the allegedly

systemic denial of Plaintiff's religious practice—is common to all three cases. Therefore, there

appears to be a substantial likelihood that the state litigation will dispose of all claims presented

in the federal case, and the cases are parallel.

When a court concludes that the federal and state cases are parallel, it next examines the

following factors to determine whether abstention is warranted:

> (1) the assumption of jurisdiction by either court over any res or property,
> (2) the inconvenience of the federal forum,
> (3) the avoidance of piecemeal litigation, . . .
> (4) the order in which jurisdiction was obtained[,] . . .
> (5) whether state or federal law supplies the rule of decision, and
> (6) whether the state court proceeding will adequately protect the rights of the party
> seeking to invoke federal jurisdiction.

*Burnett v. Physician's Online, Inc.*, 99 F.3d 72, 76 (2d Cir. 1996). "The Supreme Court has made

clear that in applying the factors, the balance is heavily weighted in favor of the exercise of

federal jurisdiction" because of "the virtually unflagging obligation of federal courts to exercise the jurisdiction given them." *Rheaume v. Pallito*, Civil Action No. 5:11–CV–72, 2012 WL 821444, at *2 (D. Vt. Feb. 7, 2012) (cleaned up), *report and recommendation adopted*, 2012 WL 787404 (D. Vt. Mar. 8, 2012).

### i.    Assumption of Jurisdiction Over a Res

As this factor is not at issue, its neutrality weighs against abstention. *See Kaplan v. Reed Smith LLP*, 919 F.3d 154, 158 (2d Cir. 2019) (per curiam) (cleaned up) ("Where a factor is facially neutral, that is a basis for retaining jurisdiction, not for yielding it.").

### ii.    Convenience of the Fora

Although neither party has addressed this factor, the relative convenience of federal court and state court in Vermont does not appear to be a significant issue in this case. The second factor's neutrality weighs against abstention.

### iii.    Avoidance of Piecemeal Litigation

This factor considers whether staying or dismissing the federal action will avoid "piecemeal litigation" by allowing a comprehensive resolution in another forum. "Generally, as between state and federal courts, the rule is that the pendency of an action in the state court is no bar to proceedings concerning the same matter in the Federal court having jurisdiction." *Colorado River*, 424 U.S. at 817 (citation modified).

Although the state and federal cases overlap in some respects, the state suits are unlikely to produce a "comprehensive disposition" of the federal claims, as they present distinct causes of action against only partially overlapping defendants. For example, this case raises issues absent from the state court cases, including that facility staff have disputed Plaintiff's ethnic and religious background and broken his sacred objects. (*See* Doc. 21 at 6.) Neither state lawsuit

names William Collins, Byron Burdick, or Alexander Bourgeois—all sued in the federal case—

nor seeks relief under the First and Fourteenth Amendments. (*Id.*) While the state suits could

potentially produce rulings that might be given preclusive effect under claim preclusion or issue

preclusion, it appears unlikely that they will fully resolve the federal case. For these reasons, the

third *Colorado River* factor weighs against abstention.

### iv.    Order in Which Jurisdiction Was Obtained

The fourth factor considers both the order in which the cases were initiated and the

relative progress of proceedings in each forum. *See Vereline v. Woodsville Guar. Sav. Bank*,

Case No. 5:15-CV-00176, 2015 WL 9216684, at *7 (D. Vt. Dec. 16, 2015).

In this case, the federal action was docketed on April 2, 2024. Of the two state cases, one

was filed on December 23, 2024 (24-CV-5437), and the second was filed on January 9, 2025

(25-CV-127)—both after the initial federal complaint in this matter. Therefore, this Court

obtained jurisdiction first.

Moreover, based on review of the relevant Superior Court dockets, the case bearing

docket number 25-CV-127 was closed on August 14, 2025. According to an August 12 Entry

Order, the court granted Defendants' Motion to Dismiss "because Plaintiff has filed no

opposition." The court further noted that "the analysis of the Defendants, that this is the incorrect

venue for the case, appears correct based on their filings." The case bearing docket number 24-

CV-5437 appears to remain pending. However, there is no record of dispositive motions,

significant discovery, or any substantive rulings in the case. The last entry on the docket lists a

Pre-trial Conference held on September 17, 2025. At the conclusion of the hearing, the Superior

Court ordered the parties to file a proposed discovery order by September 30, 2025.

Given that one case has been dismissed and the other case remains in the discovery phase, abstention is not warranted and would simply delay adjudication of Plaintiff's federal claims. *See Baggett v. Bullitt*, 377 U.S. 360, 378–79 (1964) (noting that abstention "operates to require piecemeal adjudication in many courts, . . . thereby delaying ultimate adjudication on the merits for an undue length of time"). Thus, this factor weighs against abstention.

### v.    Whether State or Federal Law Supplies the Rule of Decision

While the presence of state-law claims does not by itself warrant abstention, whether the case turns predominantly on federal law or presents novel and complex questions of state law are issues that may affect the analysis. As the Second Circuit has explained, "the absence of federal issues does not strongly advise dismissal, unless the state law issues are novel or particularly complex." *Village of Westfield v. Welch's*, 170 F.3d 116, 124 (2d Cir. 1999).

In this case, the Amended Complaint asserts claims under the First and Fourteenth Amendments and 42 U.S.C. § 1996. The state case that remains active—No. 24-CV-5437—arises under Vermont Rule 75, a state procedural mechanism for reviewing governmental action. That case is governed entirely by state law and does not appear to overlap directly with the constitutional claims at issue in the federal case. While the state proceedings may touch on some related facts, there is no indication that the state-law claims are particularly novel or complex such that this Court should abstain. Accordingly, the fifth factor weighs against abstention.

### vi.    Adequacy of State Procedures to Protect Federal Rights

This factor appears to be facially neutral and therefore weighs against abstention. *See Kibbie v. Killington/Pico Ski Resort Partners, LLC*, Case No. 5:16-CV-247, 2020 WL 13261209, at *10 (D. Vt. Dec. 4, 2020) (Crawford, J.)

15

On balance, the *Colorado River* factors do not favor abstention in this case. Mindful that *Colorado River* abstention applies only in "exceptional circumstances," I recommend that the Court retain jurisdiction over this case. *See Colorado River*, 424 U.S. at 813.

### B.    Claim Preclusion

Defendants contend that claim preclusion bars the Court's consideration of this case because "Plaintiff has already litigated and lost in state court regarding enforcement of the underlying agreement at issue." (Doc. 22 at 4.) Plaintiff and DOC reached a settlement agreement in a prior state case involving similar issues (Docket No. 21-CV-604). The Superior Court denied Plaintiff's motion to enforce the settlement agreement.

The "preclusive effect of a settlement is measured by the intent of the parties to the settlement," which is to be determined from the language of the agreement itself. *Greenberg v. Bd. of Governors of Fed. Reserve Sys.*, 968 F.2d 164, 168 (2d Cir. 1992); *see also* 18A Fed. Prac. & Proc. Juris. § 4443 (3d ed. 2018) ("The first lesson is that a private settlement agreement does not give rise to preclusion if it is not transformed into a judgment. Whatever effect it has on the future relationships between the parties derives from its force as a contract, not from res judicata.") When the language of a settlement agreement is unambiguous, courts may find that the parties intended the agreement to be a final adjudication of liability. *See Gentile v. Potter*, 409 F. Supp. 2d 221, 232 (E.D.N.Y. 2007). It is the moving party's burden to show that a claim is precluded. *Greenberg*, 968 F.2d at 170.

The agreement in this case does not address whether Plaintiff intended to forego his right to pursue his present claims. (Doc. 14-4.)[7] Absent clear evidence that the parties intended to extinguish all pending and future claims, I recommend that the Court decline to find that Plaintiff's federal claims are precluded.

### C.    Eleventh Amendment

Defendants also contend that the Eleventh Amendment bars Plaintiff's claims "against Defendants in their official capacities." (Doc. 22 at 4.) However, Plaintiff's Amended Complaint explicitly names Defendants in their individual capacities. (Doc. 21 at 1–2.) Therefore, the Eleventh Amendment does not bar Plaintiff's claims.

### D.    Personal Involvement[8]

Defendants contend that the Amended Complaint should be dismissed because it fails to "plead specific facts demonstrating each Defendant's personal involvement in the alleged constitutional violation." (Doc. 22 at 4.) The Court agrees that the Amended Complaint does not include sufficient factual allegations against Defendants Deml and Bourgeois because it does not

---

[7] The terms of the Agreement suggest that the parties did not intend to prevent Plaintiff from pursuing potential federal claims. The Agreement appears to prohibit DOC from retaliating against Plaintiff "because he engaged in protected activity, including opposing a practice he reasonably believes is made unlawful by state or federal law or pursuing a claim of religious discrimination in any state or federal forum so long as that opposition does not violate the Department's facility rules." (Doc. 14-4 at 2.)

[8] As this portion of Defendants' Motion to Dismiss contends that Plaintiff failed to plead sufficient facts to state a claim, the Court notes the applicable standard of review. "[A] complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Iqbal*, 556 U.S. at 678 (quoting *Twombly*, 550 U.S. at 570). While "special solicitude" is required, self-represented litigants nevertheless must satisfy the plausibility standard set forth in *Iqbal*. *See Harris*, 818 F.3d at 57; *Harris v. Mills*, 572 F.3d 66, 68, 72 (2d Cir. 2009). "[T]he tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions." *Iqbal*, 556 U.S. at 678.

To state a claim for relief, a complaint must contain a short and plain statement of the grounds for the court's jurisdiction; a short and plain statement of the claim showing that the claimant is entitled to relief; and a demand for the relief sought. Fed. R. Civ. P. 8(a)(1)–(3). The court is required to read a self-represented plaintiff's complaint liberally and to hold it "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted); *see also Harris*, 818 F.3d at 56–57 (noting district courts must afford "special solicitude" to a self-represented litigant, including reading the complaint liberally and construing it so as to do justice).

mention of either of them apart from their names in the case caption and list of Defendants. (Doc. 21 at 1–2.) Therefore, I recommend that all claims against Defendants Deml and Bourgeois be DISMISSED for the reasons explained in the previous Report and Recommendation. (*See* Doc. 20 at 5–8.)

The Amended Complaint also names two NSCF supervisors as Defendants: Superintendent Amy Jacobs and Assistant Superintendent Byron Burdick. The allegations against these Defendants must show some level of personal involvement given that supervisory liability in a § 1983 action cannot rest merely on a theory of respondeat superior. *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003); *Tangreti v. Bachmann*, 983 F.3d 609, 617 (2d Cir. 2020) (citation modified) ("[A] conception of supervisory liability—according to which a supervisor may be held liable based on a lesser showing of culpability than the constitutional violation requires—is inconsistent with the principle that officials may not be held accountable for the misdeeds of their agents.").

Mere "linkage in the prison chain of command" is insufficient to implicate a supervisory official in a § 1983 claim. *Ayers v. Coughlin*, 780 F.2d 205, 210 (2d Cir. 1985); *see also Wright v. Smith*, 21 F.3d 496, 501 (2d Cir. 1994) (noting that a defendant in a § 1983 action may not be held liable for constitutional violations merely because he held a high position of authority). To hold a supervisor liable as a policymaker, a plaintiff must demonstrate that the defendant had the requisite intent in committing the alleged violations. *See Tangreti*, 983 F.3d at 619. "The focus is on what the *supervisor* did or caused to be done, the resulting injury attributable to his conduct, and the *mens rea* required of him to be held liable . . . ." *Id.* at 618 (alteration in original) (internal quotation marks omitted). As one court described the necessary showing, "[r]eading *Tangreti* and . . . other decisions together . . . a senior prison official can still be held liable for his

role in creating a policy . . . but . . . only if the pleadings or record evidence permit the inference"

that the official had the necessary intent. *Stone #1 v. Annucci*, No. 20-CV-1326 (RA), 2021 WL

4463033, at *9 (S.D.N.Y. Sept. 28, 2021) (citing *Tangreti*, 983 F.3d at 619).

The Amended Complaint raises constitutional claims under the First and Fourteenth

Amendments. (Doc. 21 at 6.) "In the context of the Free Exercise Clause, [the Second Circuit

has] explained that liability depends on an officer-defendant acting with at least deliberate

indifference in depriving an inmate of the ability to engage in a religious practice." *Kravitz v.*

*Purcell*, 87 F.4th 111, 129 (2d Cir. 2023). "Deliberate indifference arises when an actor is

culpably reckless or when an official's act or failure to act reveals a conscious disregard of a

substantial risk of serious harm." *Wiggins v. Griffin*, 86 F.4th 987, 998 (2d Cir. 2023) (per

curiam). "Repeated acts of apparent negligence may indicate deliberate indifference." *Id.*

With respect to Plaintiff's First Amendment free exercise claim, the Amended Complaint

sufficiently alleges that Defendant Jacobs acted with "at least deliberate indifference" by denying

Plaintiff access to his personal prayer pipe. Plaintiff alleges that in August 2024, Defendant

Jacobs approved Plaintiff's request for a personal prayer pipe to be used in accordance with the

facility's religious accommodations policy, which provides for weekly smudging and monthly

pipe ceremonies. (Docs. 21 at 5, 21-1 at 34.) Defendant Jacobs informed Plaintiff that the

personal prayer pipe "is to be in [Plaintiff's] possession only, in [Plaintiff's] cell, unless being

used for ceremony purposes approved in advance by superintendent or designee." (Doc. 21 at 5–

6; *see also* Doc. 17-1 at 1; Doc. 14-4 at 2, ¶ 5 ("Spirit Cougar is going to consult with the Elders

in his tribe to determine if there is a pipe suitable for prayer that would not constitute a security

risk, and which could be kept in Spirit Cougar's cell. If, after this consult, it is appropriate, Spirit

Cougar will make such a request for such a safe pipe. The Department will approve such a pipe

if it determines within its reasonable discretion that it does not pose a security risk.").) After the pipe arrived at the facility in early September 2024, DOC allegedly retained the pipe instead of delivering it to Plaintiff. (Doc. 21 at 6.) As a result, Plaintiff has been unable to practice smudging, conduct any pipe ceremonies, or "carry and honor the pipe" in accordance with his religious beliefs. (*Id.* at 4, 6.)

Defendant Jacobs's conduct as alleged in the Amended Complaint permits the inference of at least deliberate indifference to Plaintiff's religious rights. DOC's retention of Plaintiff's pipe allegedly occurred despite Defendant Jacobs's initial approval and without any indication of a formal revocation, security concern, or alternative accommodation. According to the Amended Complaint, Defendant Jacobs was aware of the religious significance of the pipe, had previously authorized its use, and received multiple follow-up requests for access once the pipe arrived at the facility. (*Id.* at 6.) Nevertheless, Defendant Jacobs allegedly did not take action to ensure that Plaintiff could engage in his religious practices. Because the Amended Complaint alleges sufficient intent, Plaintiff's claim for violation of his right to free exercise of religion under the First Amendment should proceed as to Defendant Jacobs.

The same cannot be said, however, regarding Defendant Burdick. The only allegation against Defendant Burdick is that he, among other Defendants, either denied or did not respond to each of Plaintiff's requests to view and use his prayer pipe. (*Id.*) There is no evidence in the Amended Complaint from which the Court could permissibly infer that Defendant Burdick showed culpable recklessness or that his failure to act revealed a conscious disregard of a substantial risk of serious harm. *See Wiggins*, 86 F.4th at 998. And "mere negligence cannot support a First Amendment free exercise claim." *Id.*

I also recommend that Plaintiff's claims proceed against Defendant William Collins, the Volunteer Services Coordinator for NSCF. Volunteer Services Coordinators have "primary responsibility for volunteer services and assisting DOC staff in planning, recruiting, screening, supervising, evaluating, and managing correctional volunteer programs at their respective sites." Vt. Dep't of Corr., Directive No. 376, Volunteer Services and Management 3 (2016).[9] For example, volunteers provide religious programs at facilities as needed. *Id.* at 2; (*see also* Doc. 14-4 at 2, ¶ 4 ("The Department will work with suitable religious volunteers to provide Spirit Cougar the ability to perform religious ceremonies with the pipe and Kinniknik on a regular and reasonable basis.").) Therefore, the Court infers at this stage that Defendant Collins, in his role as Volunteer Services Coordinator, was responsible for organizing and overseeing pipe ceremonies for the facility. Defendant Collins allegedly failed to hold any smudging services or pipe ceremonies as required by Directive No. 380.01 despite repeated requests from Plaintiff. (*See* Doc. 21 at 4–5.) Given Defendant Collins's apparent responsibilities as Volunteer Services Coordinator, his alleged failure to arrange for any services over a period of five years—services which under DOC policy should be held monthly at minimum—suggests deliberate indifference sufficient to show his personal involvement in the alleged deprivation of Plaintiff's right to freely exercise his religion under the First Amendment.[10]

For these reasons, I recommend that the Court GRANT Defendants' Motion to Dismiss (Doc. 22) as to Defendants Deml, Bourgeois, and Burdick, and DENY Defendants' Motion to Dismiss as to Defendants Jacobs and Collins.

---

[9] The Court takes judicial notice of DOC rules and regulations issued pursuant to its delegated authority. *See* Fed. R. Evid. 201; *McGRX, Inc. v. Vermont*, No. 5:10-CV-1, 2011 WL 31022, at *1 (D. Vt. Jan. 5, 2011), *aff'd*, 452 F. App'x 74 (2d Cir. 2012).

[10] Because I recommend below that the Court dismiss Plaintiff's claims as to all Defendants under the Fourteenth Amendment and 42 U.S.C. § 1996 for failure to state a claim, I do not discuss here whether the Amended Complaint adequately alleges the personal involvement of the named Defendants as to these claims.

E.        **Failure to Comply with Rules 8 and 10**

Defendants also ask the Court to dismiss Plaintiff's Amended Complaint under Rules 8 and 10, "as Defendants cannot reasonably respond to a pleading that lacks sufficient clarity and organization." (Doc. 22 at 5.) Defendants describe the Amended Complaint as "vague, repetitive, and unstructured," and contend that "it is unclear what injunctive relief Plaintiff seeks at this time or what he means by 'spiritual and mental angst' as the basis for damages." (*Id.*)

A complaint need only provide "a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2). Moreover, "[e]ach allegation must be simple, concise, and direct." *Id.* at 8(d)(1). Rule 8 is intended to prevent "unnecessary prolixity," which "places an unjustified burden on the court" and the responding party. *See Salahuddin v. Cuomo*, 861 F.2d 40, 42 (2d Cir. 1988). When a complaint does not comply with this rule, the Court may strike portions of the complaint or dismiss the complaint. *See Simmons v. Abruzzo*, 49 F.3d 83, 86 (2d Cir. 1995). "Dismissal, however, is usually reserved for those cases in which the complaint is so confused, ambiguous, vague, or otherwise unintelligible that its true substance, if any, is well disguised." *Id.*

The Court does not agree that the Amended Complaint is vague and unstructured or that it is difficult to decipher the claims or requested relief. The Amended Complaint is divided into four sections: "The Parties to this Complaint," "Basis for Jurisdiction," "Statement of Facts," and "Relief." It specifies that Plaintiff's claims arise under 42 U.S.C. §§ 1983 and 1996 and the First and Fourteenth Amendments, (Doc. 21 at 3, 6), and plainly requests "injunctive relief and damages," (*id.* at 6). Moreover, the Amended Complaint is less than seven pages long and therefore does not burden either Defendants or the Court with "unnecessary prolixity." *Cf. Kumaran v. Nat'l Futures Ass'n, LLC*, No. 1:20-cv-3668-GHW, 2022 WL 1805936, at *8

(S.D.N.Y. June 2, 2022) ("The Court has serious concerns over whether Plaintiffs' prolix and rambling amended complaint, which is almost two hundred pages long and contains over a thousand paragraphs, complies with Rule 8."); *Washburn v. Kingsborough Cmty. Coll.,* No. 20-cv-00395(DLI)(RLM), 2022 WL 843733, at *2–3 (E.D.N.Y. Mar. 22, 2022) ("[T]he nature of Plaintiff's claims is not so complex as to warrant a 62[-]page, 504[-]paragraph complaint. . . ."). Although the Amended Complaint does not contain numbered paragraphs as required by Rule 10, when "the absence of numbering or succinct paragraphs does not interfere with one's ability to understand the claims or otherwise prejudice the adverse party, the pleading should be accepted." *Phillips v. Girdich*, 408 F.3d 124, 128 (2d Cir. 2005).

Therefore, I recommend that Defendants' Motion to Dismiss under Rules 8 and 10 be DENIED.

## III.    Screening the Remaining Claims Under 28 U.S.C. § 1915A

Because I recommend that certain claims in the Amended Complaint should proceed, I next screen the remaining claims in the Amended Complaint under 28 U.S.C. § 1915A.

### A.    Fourteenth Amendment

To prove a violation of the Equal Protection Clause, a plaintiff must demonstrate that he was "treated differently than others similarly situated as a result of intentional or purposeful discrimination." *Phillips* 408 F.3d at 129. An incarcerated plaintiff may raise an equal protection violation if, for example, he was denied religious opportunity "comparable to the opportunity afforded fellow prisoners." *See, e.g.*, *Cruz v. Beto*, 405 U.S. 319, 322 (1972) (per curiam). Plaintiff's Amended Complaint is silent regarding how the facility treats observants of other religions. Thus, Plaintiff has not stated a claim upon which relief can be granted under the Fourteenth Amendment.

For this reason, I recommend that the Court DISMISS Plaintiff's Fourteenth Amendment claim under 42 U.S.C. § 1983.

**B.    42 U.S.C. § 1996**

The Amended Complaint also brings claims under 42 U.S.C. § 1996. (Doc. 21 at 6.) The statute provides:

> it shall be the policy of the United States to protect and preserve for American Indians their inherent right of freedom to believe, express, and exercise the traditional religions of the American Indian, Eskimo, Aleut, and Native Hawaiians, including but not limited to access to sites, use and possession of sacred objects, and the freedom to worship through ceremonials and traditional rites.

42 U.S.C. § 1996.

It is well settled, however, that § 1996 does not create a cause of action or any judicially enforceable rights. *See, e.g.*, *Lyng v. Nw. Indian Cemetery Protective Ass'n,* 485 U.S. 439, 455 (1988); *Lockhart v. Kenops,* 927 F.2d 1028, 1036 (8th Cir. 1991), *cert. denied,* 502 U.S. 863 (1991); *Monet v. U.S., I.R.S.,* No. 97-00281 DAE, 1997 WL 1038149, at *2 (D. Haw. Sept. 15, 1997); *Attakai v. United States,* 746 F. Supp. 1395, 1405 (D. Ariz. 1990).

For this reason, I recommend that the Court DISMISS Plaintiff's claims under 42 U.S.C. § 1996.

<u>**Conclusion**</u>

For the reasons explained above, I recommend that Plaintiff's Motion to Amend (Doc. 21) be GRANTED. Furthermore, I recommend that the Court GRANT IN PART Defendants' Motion to Strike Plaintiff's Amended Complaint or, in the Alternative, Motion to Dismiss Amended Complaint (Doc. 22) as to Defendants Deml, Bourgeois, and Burdick and DENY Defendants' Motion as to Defendants Jacobs and Collins.

I also recommend that the Court DISMISS Plaintiff's Fourteenth Amendment claims under 42 U.S.C. § 1983 and Plaintiff's claims under 42 U.S.C. § 1996 as to all Defendants.

If this Report and Recommendation is adopted, Plaintiff's First Amendment free exercise claims shall proceed against Defendants Amy Jacobs and William Collins.

Dated at Burlington, in the District of Vermont, this 30th day of September 2025.

*/s/ Kevin J. Doyle*
Kevin J. Doyle
United States Magistrate Judge

Any party may object to this Report and Recommendation within 14 days after service thereof, by filing with the Clerk of the Court and serving on the Magistrate Judge and all parties, written objections that shall specifically identify those portions of the Report and Recommendation to which objection is made and the basis for such objections. *See* 28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 72(b)(2); L.R. 72(c). Failure to timely file such objections "operates as a waiver of any further judicial review of the magistrate [judge]'s decision." *Caidor v. Onondaga Cnty.*, 517 F.3d 601, 604 (2d Cir. 2008) (quoting *Small v. Sec'y of Health & Hum. Servs.*, 892 F.2d 15, 16 (2d Cir. 1989)).