U.S. DISTRICT COURT
DISTRICT OF VERMONT
FILED

2025 OCT 28 PM 2: 25

CLERK
BY_____
DEPUTY CLERK

UNITED STATES DISTRICT COURT
FOR THE
DISTRICT OF VERMONT

| | |
|---|---|
| JOSEPH SPIRIT COUGAR LAMPMAN, )<br>)<br>Plaintiff, )<br>)<br>v. )<br>)<br>NICHOLAS DEML, AMY JACOBS, )<br>WILLIAM COLLINS, and ALEXANDER )<br>BOURGEOUIS, )<br>)<br>Defendants. ) | Case No. 2:24-cv-166 |

**ORDER**
**(Docs. 7, 14, 17, 20, 21, 22, 28)**

Plaintiff Joseph Spirit Cougar Lampman, representing himself, brings this action under 42 U.S.C. § 1983 against the former Commissioner of Vermont Department of Corrections (DOC) and other DOC officials alleging that Defendants denied him the right to practice his religion while in custody. On January 13, 2025, the Magistrate Judge issued a Report and Recommendation ("First R&R") (Doc. 20) on Defendants' pending Motion to Dismiss (Doc. 14) and Plaintiffs' Motion to Amend Complaint (Doc. 17). The Magistrate Judge first recommended granting the Defendant's motion. He then further recommended that the court deny Plaintiff's Motion to Amend because the Proposed Amended Complaint suffered from the same flaws as the current Amended Complaint. (*Id.* at 2.) The Magistrate Judge recommended, however, that Plaintiff be afforded another opportunity to amend his complaint.

Plaintiff did not file an objection to the First R&R, but he did file a Second Amended Complaint (Doc. 21) that differs substantially from the Proposed Amended Complaint in his Motion to Amend. The Second Amended Complaint alleges violations of Plaintiff's First Amendment right to free exercise of religion and his Fourteenth Amendment right to equal

protection under the law. He asserts these claims against former DOC Commissioner Nicholas Deml, NSCF Superintendent Amy Jacobs, Volunteer Services Coordinator William Collins, NSCF Assistant Superintendent Byron Burdick, and Corrections Service Specialist Alexander Bourgeois in their individual capacities.

Defendants filed a Motion to Strike the Second Amended Complaint, reasoning that the court had not yet ruled on the First R&R and therefore had not authorized Plaintiff to file the amended complaint. (Doc. 22.) Defendants argue that, in that procedural posture, Plaintiff was required under Fed. R. Civ. P. 15(a)(2) to obtain leave from the court to file the Second Amended Complaint. In the alternative, Defendants seek dismissal of the Second Amended Complaint. (Doc. 22.)

On September 30, 2025, the Magistrate Judge issued a second Report and Recommendation ("Second R&R") (Doc. 28). The Second R&R recommends (1) that the court treat the Second Amended Complaint as a Motion to Amend; (2) that the court grant the Motion to Amend; and (3) that the court grant in part and deny in part the Motion to Strike or, in the Alternative, Dismiss the Amended Complaint. Specifically, the Second R&R recommends that the court dismiss Plaintiff's Fourteenth Amendment claims in their entirety and dismiss the First Amendment claims against all Defendants except Defendant Jacobs and Defendant Collins. Neither party filed objections to the Second R&R, although Plaintiff has since filed another motion to amend his complaint. (Doc. 30.)

After careful review of the file and the Magistrate Judge's thorough R&Rs, the court AFFIRMS, APPROVES, and ADOPTS the First Report and Recommendation. The court supplements the First R&R by addressing Plaintiff's claims for equitable relief against

Defendants in their official capacities. The court AFFIRMS, APPROVES, and ADOPTS the Second Report and Recommendation in full. *See* 28 U.S.C. § 636(b)(1).

## Background

The Report and Recommendation lays out the relevant factual background in this case, drawn from the Second Amended Complaint:

> Plaintiff is currently under the supervision of DOC and incarcerated at [Northern State Correctional Facility (NSCF)]. Plaintiff is a tribal citizen of the Abenaki Nation of Missisquoi in Vermont. He observes the traditional religious practices of his tribe, including smudging and pipe ceremonies.
>
> . . .
>
> On or about October 29, 2019, DOC transferred Plaintiff from a facility in Mississippi to a Vermont facility. Plaintiff alleges that he was able to practice his traditional beliefs while incarcerated in Mississippi.
>
> Since returning to Vermont, Plaintiff has requested Native American services at NSCF several times. DOC's Volunteer Services Coordinator, William Collins, "would answer some requests and others he would not answer." [(Doc. 21 at 5.)]
>
> According to Plaintiff, DOC has not held any Native American services since he returned to Vermont. DOC's Religious Services Guide, which Plaintiff attaches to his Amended Complaint, provides that "smudging is to take place at least one time per week" and that pipe ceremonies "shall be held at minimum once per month." (Doc. 21-1 at 34.)
>
> On August 11, 2024, Plaintiff placed a request to order a personal prayer pipe after consulting with Chief Gagne of the Abenaki Nation of Missisquoi. On August 23, NSCF Superintendent Amy Jacobs approved Plaintiff's request for a personal prayer pipe, provided that the pipe is to be in Plaintiff's possession only, in his cell, unless being used for ceremony purposes or approved in advance by superintendent or designee.
>
> The pipe arrived at NSCF on September 3, 2024. According to Plaintiff, DOC has never given the pipe to Plaintiff. Plaintiff has requested many times to view and use the pipe, and DOC staff, including Amy Jacobs, Byron Burdick, and William Collins, allegedly deny or do not answer each request.
>
> Plaintiff also alleges that NSCF staff members—identified in the [Second] Amended Complaint only as "John Does"—have told him that he is white, not Native American, and broken his "sacred objects." [(Doc. 21 at 6.)] The [Second]

3

>Amended Complaint does not specify which sacred objects staff members allegedly broke.

(Doc. 28 at 4–6 (cleaned up).)

Plaintiff has two pending civil cases in Vermont Superior Court addressing similar issues. (Doc. 22 at 3–4.) The first case, Docket No. 25-cv-127, concerns the availability of Native American services at NSCF. The second case addresses Plaintiff's desire to be called by his preferred name, "Spirit Cougar." A third case, concerning Plaintiff's access to religious objects and ceremonies, concluded on February 7, 2025. (Doc. 22-1; *see also* Doc. 18-1.) In that case, Plaintiff and the defendants reached a mediated agreement specifying particular sacred objects that Plaintiff could have at NSCF. (Doc. 14-4.) The Agreement provides that Plaintiff must file official requests for the objects, to be approved by VDOC, at which point Plaintiff can order those objects from approved vendors. (*Id.*) On February 7, 2025, the state court dismissed Plaintiff's motion to enforce the settlement agreement. (Doc. 22-1.)

## Standard of Review

Where a magistrate judge enters a recommended disposition on a dispositive motion, a district judge must determine "de novo" any part of the recommendation to which a party properly objects. Fed. R. Civ. P. 72(b)(3); *see also* 28 U.S.C. § 636(b)(1); *Cullen v. United States*, 194 F.3d 401, 405 (2d Cir. 1999). "The court may adopt those portions of the [R&R] to which no objection is made as long as no clear error is apparent from the face of the record." *United States v. Shores*, No. 17-cr-00083, 2024 WL 489313, at *10 (D. Vt. Feb. 8, 2024) (alteration in original; quoting *Green v. Dep't of Educ. of City of N.Y.*, No. 18 Civ. 10817, 2020 WL 5814187, at *2 (S.D.N.Y. Sept. 30, 2020)). The district judge may "accept, reject, or modify, in whole or in part, the findings or recommendations made by the magistrate judge." 28 U.S.C. § 636(b)(1); *see also Cullen*, 194 F.3d at 405.

## Rule 12(b)(1) Standard

"Determining the existence of subject matter jurisdiction is a threshold inquiry and a claim is properly dismissed for lack of subject matter jurisdiction under Rule 12(b)(1) when the district court lacks the statutory or constitutional power to adjudicated it." *Morrison v. Nat'l Australia Bank*, 547 F.3d 167, 170 (2d Cir. 2008.) "The plaintiff bears the burden of proving subject matter jurisdiction by a preponderance of the evidence." *Liranzo v. United States*, 690 F.3d 78, 84 (2d Cir. 2012). "In resolving a motion to dismiss for lack of subject matter jurisdiction under Rule 12(b)(1) a district court may consider evidence outside of the pleadings." *Morrison*, 547 F.3d at 170.

## Rule 12(b)(6) Standard

Courts afford pleadings filed by self-represented parties "special solicitude." *See Ceara v. Deacon*, 916 F.3d 208, 213 (2d Cir. 2019) (internal quotation marks omitted). Thus, the court is required to read a self-represented plaintiff's complaint liberally and to hold it "to less stringent standards than formal pleadings drafted by lawyers." *Erickson v. Pardus*, 551 U.S. 89, 94 (2007) (internal quotation marks and citation omitted). The court must construe a self-represented plaintiff's complaint to raise the strongest arguments it suggests. *See Harris v. Miller*, 818 F.3d 49, 56 (2d Cir. 2016) (per curiam).

Nevertheless, all complaints "must contain sufficient factual matter, accepted as true, to state a claim to relief that is plausible on its face." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (internal quotation marks and citation omitted). In assessing a complaint, the court must "accept[] all factual allegations as true and draw[] all reasonable inferences in favor of the plaintiff." *United States ex rel. Chorches v. Am. Med. Response, Inc.*, 865 F.3d 71, 78 (2d Cir. 2017) (quoting *Trs. of Upstate N.Y. Eng'rs Pension Fund v. Ivy Asset Mgmt.*, 848 F.3d

5

561, 566 (2d Cir. 2016)) (internal quotation marks omitted). "Dismissal is appropriate when 'it is clear from the face of the complaint . . . that the plaintiff's claims are barred as a matter of law.'" *Biocad JSC v. F. Hoffman-La Roche*, 942 F.3d 88, 93 (2d Cir. 2019) (alteration in original) (quoting *Parkcentral Glob. Hub Ltd. v. Porsche Auto Holdings SE*, 763 F.3d 198, 208–09 (2d Cir. 2014)).

## Analysis

The court will address the two R&Rs sequentially. The first two sections of the analysis examine the Defendants' Motion to Dismiss the First Amended Complaint and Plaintiff's first Motion to Amend the Complaint, the subjects of the First R&R. The court then turns to the Second R&R and Defendants' Motion to Strike the Second Amended Complaint, or, alternatively, Dismiss the Second Amended Complaint.

**I.**     **Motion to Dismiss First Amended Complaint (First R&R)**

Defendants seek dismissal of the First Amended Complaint on six grounds: *Younger* abstention, *Colorado River* abstention, claim preclusion, failure to state a claim under Fed. R. Civ. P. 12(b)(6), mootness, and sovereign immunity under the Eleventh Amendment. Because the court determines that dismissal is warranted based on the latter three arguments, the court does not reach Defendants' abstention and claim preclusion arguments. *See Spargo v. N.Y. State Comm'n on Jud. Conduct*, 351 F.3d 65, 74 (2d Cir. 2003) (noting the "inherent flexibility that federal courts exercise to choose among threshold grounds for disposing of a case without reaching the merits" (internal quotation marks omitted)).

**A.**     **Individual Capacity Claims**

"It is well settled in this Circuit that personal involvement of the defendants in alleged constitutional deprivations is a prerequisite to an award of damages under § 1983." *Spavone v.*

6

*N.Y. State Dep't of Corr. Servs.*, 719 F.3d 127, 135 (2d Cir. 2013). Thus, to make out a claim against a defendant in their individual capacity, a plaintiff must show some "tangible connection" between the alleged constitutional violation and the particular defendant. *Bass v. Jackson*, 790 F.2d 260, 263 (2d Cir. 1986).

As the First R&R sets forth, "[t]he Complaint does not allege the personal involvement of any named Defendants in the alleged First and Fourteenth Amendment violations." (Doc. 20 at 5.) Instead, it refers only generally to "staff at Northern State Correctional Facility" as the perpetrators of the offending acts. (Doc. 7 at 5.) Plaintiff has therefore failed to show a tangible connection between the alleged constitutional violations and the named Defendants.

Plaintiff has also failed to adequately allege that Defendants are liable under a theory of supervisory liability. In § 1983 actions, supervisors cannot be held liable merely because they occupy a position of power over the employees who engaged in the alleged constitutional violation. *See Hernandez v. Keane*, 341 F.3d 137, 144 (2d Cir. 2003); *Tangreti v. Bachmann*, 983 F.3d 609, 617 (2d Cir. 2020). Rather, the supervisor must have some level of personal involvement, just like any other defendant. With supervisors, that personal involvement may take the form of creating or continuing an unconstitutional policy. *See Jok v. City of Burlington, Vt.*, No. 19-cv-70, 2022 WL 444361, at *11 (D. Vt. Feb. 14, 2022). In this case, however, the First Amended Complaint neither states nor implies that the Defendants had any role in creating or continuing a policy concerning religious expression that violated Plaintiff's constitutional rights.

Because the First Amended Complaint fails to allege the personal involvement of the Defendants in the alleged constitutional violations as employees or supervisors, the court

DISMISSES without prejudice Plaintiff's claims against the Defendants in their individual capacities.

### B. Official Capacity Claims

#### 1. Equitable Relief

Defendants argue that Plaintiff's request for equitable relief is moot because, in light of the written agreement reached in state court case Docket No. 21-cv-604, "there is no additional relief regarding the sacred objects that this Court can provide." (Doc. 14 at 9.) If true, the court would lack subject matter jurisdiction on Plaintiff's claims for equitable relief.[1]

In support of their argument, Defendants assert that "VDOC has agreed multiple times since October 2022 to assist Mr. Lampman in obtaining the requested sacred items; there has been no denial of these requests by VDOC." (*Id.*) Defendants further contend that, despite having his requests approved, Plaintiff has not placed orders for any of the sacred objects he originally requested. (*Id.* at 3.) Finally, Defendants cite Plaintiff's failure to file a motion to enforce the settlement agreement, as directed by the Vermont Superior Court, as evidence that there is no further relief the court can provide.

Plaintiff's Prayer for Relief states that he "would like sacred objects so I can practice my Missisquoi Indian Beliefs." (Doc. 7 at 5.) He specifies that he wants access to a sacred prayer pipe, a smudge bowl, sacred herbs, and "other sacred objects." (*Id.*) A smudge bowl and sacred herbs are not covered by the settlement agreement from Plaintiff's state court case, and

---

[1] Defendants frame this argument as one under 12(b)(6) for failure to state a claim upon which relief can be granted. The ability of the court to grant relief to a plaintiff is, however, an issue of subject matter jurisdiction under 12(b)(1). Under Article III of the Constitution, federal courts can preside over only "cases" or "controversies." When a court cannot grant relief to the plaintiff, the matter before the court is not a "case" or "controversy." Thus, "when a case becomes moot, the federal courts lack subject matter jurisdiction over the action." *Srour v. New York City*, 117 F.4th 72, 81 (2d Cir. 2024) (internal quotation marks and citation omitted).

8

Defendants' evidence shows that Plaintiff's request for sacred herbs on August 8, 2023, was denied. (Doc. 14-5 at 7.) VDOC has similarly denied other requests for sacred objects not covered by the settlement agreement. (*Id.* 5–6.) Additionally, Defendants' evidence shows that it denied Plaintiff's request for a personal prayer pipe, an item covered by the settlement agreement and requested as relief in this case. (*Id.* at 8.) Although the denial instructs Plaintiff to comply with the guidelines set forth in the settlement agreement in any subsequent requests for a prayer pipe, the denial in no way dispositively proves that Defendants have complied with the settlement agreement and that there is no further relief this court can provide to Plaintiff. As for Defendants' argument that Plaintiff failed to file a motion in state court to enforce the settlement agreement, he has since filed that motion (Doc. 18-1 at 8), which the state court denied on February 5, 2025 (Doc. 22-1).

Nevertheless, the court has an independent duty to screen the First Amended Complaint under 28 U.S.C. § 1915(e)(2)(B), which provides: "[T]he court shall dismiss [a] case [filed *in forma pauperis*] at any time if the court determines that . . . the action . . . (i) is frivolous or malicious; (ii) fails to state a claim on which relief may be granted; or (iii) seeks monetary relief against a defendant who is immune from such relief." In this case, the court notes that "the real party in interest in an official-capacity suit is the governmental entity and not the named official, [so] the entity's policy or custom must have played a part in the violation of federal law." *Hafer v. Melo*, 502 U.S. 21, 25 (1991) (internal quotation marks and citation omitted). The First Amended Complaint contains no allegations that DOC maintains a policy of denying requests for religious items or ceremonies or a policy of using racial slurs. The First Amended Complaint merely alleges that "staff at Northern State Correctional Facility have used racial slurs and broke Spirit Cougar's sacred objects" (Doc. 7 at 5) and that his requests for "Native American Indian

9

Services . . . [have been] denied each and every time," (*id.* at 4). Because these allegations are insufficient to plausibly plead that a DOC policy or custom played a part in the violation of Plaintiff's constitutional rights, the court will DISMISS without prejudice Plaintiff's First Amended Complaint insofar as it requests equitable relief against Defendants in their official capacities.

### 2. Monetary Damages

As the First Report and Recommendation explains, the Eleventh Amendment and sovereign immunity bar Plaintiff's § 1983 claims for monetary damages against Defendants in their official capacities. "[A]s a general rule, state governments may not be sued in federal court unless they have waived their Eleventh Amendment immunity, or unless Congress has abrogated the states' Eleventh Amendment immunity acting pursuant to its authority under Section 5 of the Fourteenth Amendment." *Gollomp v. Spitzer*, 568 F.3d 355, 366 (2d Cir. 2009) (cleaned up). And Eleventh Amendment immunity "extends beyond the states themselves to state agents and state instrumentalities that are, effectively, arms of the state," including state employees sued in their official capacities. *Id.* at 366 (internal quotation marks omitted).

In this case, Vermont has not waived its Eleventh Amendment sovereign immunity. *See* 12 V.S.A. § 5601(g) (Vermont Tort Claims Act preserves Eleventh Amendment immunity for all claims not specifically waived). Nor did Congress's enactment of § 1983 abrogate state sovereign immunity. *See Quern v. Jordan*, 440 U.S. 332, 340–42 (1979). The court therefore DISMISSES Plaintiff's claims for monetary damages against Defendants in their official capacities as barred by the Eleventh Amendment.

## II.  First Motion to Amend Complaint (First R&R)

Before the Magistrate Judge issued the First R&R, Plaintiff requested an opportunity to amend his complaint. (Doc. 17.) "The court should freely give leave [to amend a complaint] when justice so requires." Fed. R. Civ. P. 15(a)(2). However, as the Report and Recommendation explains, the court may deny a motion to amend where such amendment would be futile. *Aetna Cas. & Sur. Co. v. Aniero Concrete Co.*, 404 F.3d 566, 603 (2d Cir. 2005). And, in this case, Plaintiff's proposed amended complaint would be futile because it would not survive a motion to dismiss under Fed. R. Civ. P. 12(b)(6). *Buksh v. Sarchino*, 736 F. Supp. 3d 221, 225 (D. Vt. 2024) ("An amendment is futile if it results in a claim that cannot survive a motion under Federal Rule of Civil Procedure 12(b)(6)."). Like the original complaint, it fails to make allegations as to any of the named Defendants, and its claim for monetary damages against Defendants is barred by sovereign immunity. Additionally, Plaintiff has not included enough facts to plausibly allege that his inability to access certain sacred objects has "substantially burdened" his religious practice, as required to prove his free-exercise claim under the First Amendment. *Wilson v. City of New York*, No. 18-CV-2262, 2021 WL 5908860, at *4 (E.D.N.Y. Dec. 14, 2021). For instance, the Proposed Amended Complaint does not describe the role of those objects in practicing Plaintiff's religion. The court therefore DENIES Plaintiff's First Motion to Amend the Complaint (Doc. 17).

## III.  Motion to Strike Second Amended Complaint (Second R&R)

In the First R&R, the Magistrate Judge recommended that Plaintiff be given another opportunity to amend his complaint so he could address the remaining issues with his pleading. Plaintiff filed a Second Amended Complaint before the court had the opportunity to rule on the First R&R. (Doc. 21.)

11

Defendants have filed a Motion to Strike Plaintiff's Second Amended Complaint (Doc. 22). Their primary argument for striking the complaint is that, given the procedural posture of the case, Fed. R. Civ. P. 15(a)(2) required Plaintiff to either obtain the written consent of the opposing party or seek leave from the court before filing the Second Amended Complaint.

Plaintiff did, in fact, violate Fed. R. Civ. P. 15(a)(2). At the same time, a court has discretion to grant leave to amend on the court's own initiative when a party violates Rule 15(a)(2). *See, e.g., Syeed v. Bloomberg L.P.*, 568 F. Supp. 3d 314, 321 (S.D.N.Y. 2021), *vacated and remanded on other grounds*, No. 22-1251, 2024 WL 2813563 (2d Cir. June 3, 2024) (summary order); *see also Lewittes v. Cohen*, No. 03 Civ. 189, 2004 WL 1171261, at *3 (S.D.N.Y. May 26, 2004). The court agrees with the R&R's recommendation that the Second Amended Complaint be treated as a motion to amend, given Plaintiff's pro se status and the fact that he likely interpreted the First R&R as giving him permission to file an amended complaint. The court also agrees with the R&R that Plaintiff's motion to amend should be granted because doing so will not cause excessive delay or undue prejudice to Defendants, nor would amendment be futile. *See Holmes v. Grubman*, 568 F.3d 329, 334 (2d Cir. 2009). The court therefore rejects Defendants' Rule 15(a)(2) argument for striking the Second Amended Complaint.

As for Defendants' Rule 8 and Rule 10 arguments for striking the Second Amended Complaint, the court agrees with the Second R&R's analysis and conclusion that those arguments do not warrant striking the complaint. The court will therefore recognize the Second Amended Complaint (Doc. 21) as the new operative pleading in this case.

## IV. Motion to Dismiss the Second Amended Complaint (Second R&R)

In the alternative, Defendants move to dismiss the Second Amended Complaint. Defendants advance several arguments for dismissal: (1) *Younger* and *Colorado River*

abstention; (2) issue and claim preclusion; (3) Eleventh Amendment immunity for claims against Defendants in their official capacities; (4) failure to allege Defendants' personal involvement in the alleged constitutional violations; and (5) failure to comply with Fed. R. Civ. P. 8 and 10.

The court has thoroughly reviewed the Second R&R and finds no error with any of the reasoning or conclusions regarding the Motion to Dismiss the Second Amended Complaint. As outlined in the R&R, abstention is not warranted in this case under either *Younger v. Harris*, 401 U.S. 37 (1971) or *Colorado River Water Conservation District v. United States*, 424 U.S. 800, 813 (1976). Nor are there any preclusion issues in this case, as the settlement that the parties reached in Plaintiff's state court case does not express an intent to bar Plaintiff from pursuing his present claims. *See Greenberg v. Bd. of Governors of Fed. Reserve Sys.*, 968 F.2d 164, 168 (2d Cir. 1992) (holding that the "preclusive effect of a settlement is measured by the intent of the parties to the settlement," which is to be determined from the language of the agreement itself). Further, as the R&R explains, the Eleventh Amendment is not a bar to Plaintiff's claims because the Second Amended Complaint brings only individual capacity claims.

The personal involvement requirement of § 1983 warrants dismissal of the First Amendment claims against all Defendants except for Defendant Jacobs and Defendant Collins. As the R&R notes, the Second Amended Complaint "does not include sufficient factual allegations against Defendants Deml and Bourgeois because it does not mention either of them apart from their names in the case caption and list of Defendants." (Doc. 28 at 17–18.) The R&R also carefully outlines that, although the Second Amended Complaint contains allegations that Defendant Burdick, among other Defendants, either denied or did not respond to Plaintiff's requests to use his prayer pipe, there were no allegations in the complaint "from which the Court

13

could permissibly infer that Defendant Burdick showed culpable recklessness or that his failure to act revealed a conscious disregard of a substantial risk of serious harm." (*Id.* at 20.)

By contrast, Plaintiff has sufficiently alleged that Defendant Jacobs' personal involvement in a violation of his First Amendment rights. Defendant Jacobs personally denied Plaintiff's requests to access his prayer pipe, even though Jacobs had earlier approved his request to order a prayer pipe and had informed him that the prayer pipe "is to be in [Plaintiff's] possession only, in [Plaintiff's] cell, unless being used for ceremony purposes approved in advance by superintendent or designee." (*Id.* at 19 (alterations in original; quoting Doc. 21 at 5–6.) Further, Defendant Jacobs had approved the request to order a prayer pipe for use in accordance with the facility's religious accommodations policy, which provides for weekly smudging and monthly pipe ceremonies. (Doc. 21-1 at 34.) The R&R therefore concluded that the Second Amended Complaint adequately alleged that Defendant Jacobs acted with at least deliberate indifference in denying Plaintiff's requests. (Doc. 28 at 19.) Similarly, Plaintiff made sufficient allegations against Defendant Collins, the Volunteer Services Coordinator for NSCF whose role included responsibility for organizing and overseeing pipe ceremonies for the facility. (*Id.* at 21.) Because Defendant Collins "allegedly failed to hold any smudging services or pipe ceremonies as required by Directive No. 380.01 despite repeated requests from Plaintiff," Plaintiff sufficiently alleged Defendant Collins' personal involvement in the alleged deprivation of Plaintiff's First Amendment rights. (*Id.*)

The court agrees with the Second R&R that Fed. R. Civ. P. 8 and 10 do not justify the dismissal of the Second Amended Complaint. Plaintiff has not violated Rule 8, and his violation of Rule 10 does not impact the comprehensibility of the Second Amended Complaint. *See Phillips v. Girdich*, 408 F.3d 124, 128 (2d Cir. 2005) (holding that, where "the absence of

numbering or succinct paragraphs does not interfere with one's ability to understand the claims or otherwise prejudice the adverse party, the pleading should be accepted").

Finally, the court agrees with the R&R that, in screening Plaintiff's Fourteenth Amendment claim under 28 U.S.C. § 1915A, the Second Amended Complaint fails to state an equal protection claim. As the R&R explains, an equal protection claim must include allegations that the plaintiff was treated differently than other similarly situated people because of intentional discrimination. *See Phillips*, 408 F.3d at 129. Because the Second Amended Complaint "is silent regarding how the facility treats observants of other religions," Plaintiff has failed to state an equal protection claim. (Doc. 28 at 23.)

## Conclusion

The court AFFIRMS, APPROVES, and ADOPTS the First R&R's (Doc. 20) recommendations in full. The court supplements the R&R by addressing Plaintiff's claims for equitable relief against Defendants in their official capacities. Accordingly, the Motion to Dismiss the First Amended Complaint (Doc. 14) is GRANTED. Plaintiff's First Amended Complaint (Doc. 7) is DISMISSED WITH PREJUDICE insofar as it brings claims for monetary damages against Defendants in their official capacities. The First Amended Complaint is otherwise DISMISSED WITHOUT PREJUDICE. Plaintiff's Motion to Amend Complaint (Doc. 17) is DENIED.

The court AFFIRMS, APPROVES, and ADOPTS the Second R&R's (Doc. 28) recommendations in full. Defendant's Motion to Strike the Second Amended Complaint or, in the Alternative, Dismiss the Second Amended Complaint (Doc. 22) is GRANTED IN PART and DENIED IN PART. The Second Amended Complaint (Doc. 21) is now the operative pleading

in this case. Plaintiff's First Amendment claims against Defendant Jacobs and Defendant Collins may proceed. Plaintiff's other claims are DISMISSED.

Dated at Burlington, in the District of Vermont, this 28th day of October, 2025.

_____
Geoffrey W. Crawford, Judge
United States District Court